**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAURA PEREZ<br>319 E. 24th Street, Apt. 101<br>Chester, PA 19013 | :<br>:<br>:     CIVIL ACTION |
|       Plaintiff, | :<br>:     No.:_____ |
| v. | :<br>:     **JURY TRIAL DEMANDED** |
| FXI, INC.<br>100 Matsonford Road<br>5 Radnor Corporate Center, Suite 300<br>Radnor, PA 19087 | :<br>:<br>:<br>: |
|       Defendant. | :<br>: |

## CIVIL ACTION COMPLAINT

Ms. Laura Perez ("Plaintiff," or "Ms. Perez,") by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Ms. Perez has initiated this action to redress violations by FXI, Inc. ("Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 et seq.), and the Pennsylvania Human Relations Act ("PHRA" - 43 P.S. Section 951 et seq.).

2.      Ms. Perez alleges, *inter alia*, that Defendant discriminated against her on the basis of her disabilities by failing to accommodate her requests for reasonable accommodations and terminating her employment in retaliation for requesting accommodations and/or complaining about disability discrimination.

3.      As a direct consequence of Defendant's unlawful actions, Ms. Perez seeks damages as set forth herein.

**JURISDICTION AND VENUE**

4.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's state law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

5.      This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

6.      Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue is properly laid in this district because the events giving rise to this lawsuit occurred here and Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

7.      Ms. Perez filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed the Charge with the Pennsylvania Human Relations Commission ("PHRC").

8.      Ms. Perez has properly exhausted her administrative remedies before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving the EEOC's Right-to-Sue letter.

**PARTIES**

9.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.  Ms. Perez is an adult individual, with an address as set forth in the caption.

11.  Defendant is a Delaware business corporation with a principal place of business as set forth in the caption where it employed Plaintiff.

12.  At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

13.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14.  On or about September 25, 2023, Defendant hired Ms. Perez as a Research and Development ("R&D") Scientist until unlawfully terminating her on or about April 3, 2025, as discussed herein. Ms. Perez was hired as a hybrid-employee allowing one (1) remote day per week.

15.  Throughout her employment, Ms. Perez was a hard-working employee with no history of performance or discipline concerns (prior to requesting reasonable accommodations) and primarily supervised by Defendant's R&D Director, Brian Sobieski ("Sobieski").

16.  Because Ms. Perez frequently went above and beyond, frequently working long hours and staying late, Sobieski initially identified her as a kindred spirit in her beliefs about work-life balance.

3

17. Early in her tenure of employment, Ms. Perez and Sobieski bonded over their love of the work and Sobieski even identified Ms. Perez early on as management material.

18. Over Ms. Perez's first year of employment, there were many conversations where Sobieski made it clear he wanted Ms. Perez to be his successor as he moved up in rank (from R&D Manager to R&D Director), and that she would "be his number one."

19. However, things began to change in the Fall of 2024, as Ms. Perez began to experience health flare-ups that would delay her in the mornings on occasion.

20. By way of background, Ms. Perez suffers from several chronic and ADA qualifying disabilities, including, but not limited to, anxiety, chronic fatigue, Irritable Bowel Syndrome ("IBS"), cardiac issues, ADHD, autism, and connective tissue disorder.

21. As a result, Ms. Perez is (at times) substantially limited from performing major life activities such as interacting with others, thinking, concentrating, and caring for herself.

22. Ms. Perez therefore requested and/or required reasonable accommodations as discussed in further detail herein.

23. On or about October 22, 2024, Ms. Perez met with Sobieski for a regularly scheduled "1 on 1" meeting. Ms. Perez disclosed her aforementioned health issues with Sobieski and indicated that she would benefit from some reasonable accommodations.

24. Ms. Perez outlined some things she felt would help her better manage her disabilities at work such as, for example, minor schedule modifications, the ability to work from home ("WFH") as needed, the ability to come in a few minutes late here or there as work allowed, and a company issued cell phone.

25.     While Ms. Perez had tasks that could only be completed in the lab, a plethora of her job functions could be (and were in fact) performed from home. It is important to note that Ms. Perez was not requesting to work from home full-time or on a permanent basis.

26.     Ms. Perez was open with Sobieski about her health issues and complications she was experiencing. Sobieski even referred Ms. Perez to his wife (who is a massage therapist) as a result.

27.     Instead of just easily granting these minor tweaks to Plaintiff's schedule, Sobieski passed Plaintiff's requests off to Defendant's Human Resources ("HR") and Benefits Administrator Patti Buono ("Buono").

28.     However, Sobieski (who also bragged about how he had a "great immune system" and "never got sick") began to get visibly frustrated that Ms. Perez was getting "sick" at all, despite its minor, if any, impact on her work.

29.     Sobieski demonstrated open and obvious contempt for anyone who wanted to work remotely and his demeanor towards Ms. Perez began to change drastically.

30.     On or about October 29, 2024, Ms. Perez again met with Sobieski (at her request) to discuss her aforementioned accommodation requests, specifically Ms. Perez wanted Sobieski to know that she was hesitant to formally request accommodations with HR because she feared retaliation.

31.     Sobieski denigrated Ms. Perez's aforementioned disabilities and compared them to "seasonal allergies," stating that he would "never let [his allergies] get in the way of work."

32.     Sobieski crassly told Ms. Perez that she had been "taking advantage" of his "kindness and leniency" and that formally requesting accommodations was her only "path

forward" indicating that unless formal accommodations were granted, she would be subject to discipline.

33.     Reluctantly, on or about November 1, 2024, Ms. Perez met with Buono to discuss the ADA accommodation process and formally request accommodations through Defendant's HR.

34.     Three (3) days later, on or about November 4, 2024, Buono emailed Ms. Perez incorrect ADA paperwork, to which Ms. Perez immediately requested a corrected version. Ms. Perez also notified Sobieski that she had initiated the formal accommodation process with Buono to keep him in the loop.

35.     On or about November 15, 2024, Ms. Perez met with her doctor who completed and returned her ADA paperwork (via fax) to Buono.

36.     On or about December 3, 2024, Ms. Perez again met with Sobieski during a regularly scheduled "1 on 1" and inquired where the accommodation request process stood (as she had still not heard anything back from Buono). Sobieski reached out to Buono for an update.

37.     On or about December 4, 2024, Buono informed Ms. Perez that she had allegedly not received her ADA paperwork from Ms. Perez's doctor. Ms. Perez directed her doctor to resend her accommodation paperwork to Buono (via email this time).

38.     On or about December 6, 2024, Ms. Perez then met with Buono to discuss her ADA requests as Buono was seeking additional "clarification" of Ms. Perez's needs.

39.     On or about December 12, 2024, and mere days after submitting accommodation requests, Sobieski called into question Ms. Perez's performance for the first time ever, specifically referencing her schedule requests.

40. Ms. Perez was extremely upset, caught off guard, and protested that: (1) Sobieski had never raised any claimed issues with her before her accommodation requests; and (2) her accommodations requests were in process.

41. On or about December 17, 2024, Ms. Perez met with Buono and Defendant's HR Director Amy Williams ("Williams") to discuss her pending accommodation requests.

42. Buono and Williams told Ms. Perez that she had only been "approved" for one (1) work from home day every other week and pressured her into taking unpaid block FMLA leave instead.

43. Ms. Perez did not require block leave and asked about her other accommodation requests and Williams and Buono said they would "re-discuss" with Sobieski.

44. Later that same day during a regularly scheduled "one on one," Sobieski launched into a tirade making personal attacks towards Ms. Perez. Sobieski concluded the meeting by stating, "there isn't anything left to say. Just go."

45. **<u>Just three (3) days later</u>**, on or about December 20, 2024, Sobieski issued Ms. Perez an unfounded performance improvement plan ("PIP"), a clear attempt to start papering Ms. Perez's file.

46. On or about December 23, 2024, Buono emailed Ms. Perez and Sobieski to outline Ms. Perez's modified schedule, including the same one (1) work from home day every two weeks and working hours of 9:30am-5:30pm.

47. Over the next several months, Ms. Perez performed her job well and despite objectively meeting performance goals, was placed on a second unfounded PIP on or about February 25, 2025.

48.     Based on Sobieski's increased scrutiny, selective discipline, removal of Ms. Perez's job duties, personal attacks toward her, and accusations that Ms. Perez was being defensive or seeking "special treatment," it was clear that Sobieski was continuing to paper Ms. Perez's file as part of a broader campaign of retaliation.

49.     Sobieski would blatantly lie about Ms. Perez's performance.  Ms. Perez repeatedly raised her concerns (to no avail) with Defendant's management and HR, specifically that Sobieski's treatment of her and the timing of these PIPs was retaliatory and discriminatory.

50.     For example, during a meeting with Ms. Perez and Williams on or about February 28, 2025, Sobieski accused Ms. Perez of continuing to be late despite her modified schedule. Ms. Perez immediately refuted this blatantly false accusation (as she had actually been getting in earlier than required).

51.     Williams asked Sobieski if he had noted any specific days Ms. Perez had allegedly been late, to which he was forced to respond he did not.

52.     Williams asked Ms. Perez if she "consented" to having her swipe badge scan data audited, to which Ms. Perez gladly consented as she had not been late and it would prove Sobieski was lying about her performance.

53.     On several other occasions, Williams again asked Ms. Perez for "consent" to review her badge swipes, all of which Ms. Perez willingly granted. Williams never raised any claim that Ms. Perez was late, or that there was any issue with her badge swipes.

54.     Eventually, on or about April 3, 2025, Defendant terminated Ms. Perez, even before her second PIP concluded, on the basis that alleged (and blatantly false) "communication failures" could never improve by the end of that time frame.

55.     In connection with her termination, Defendant offered Ms. Perez an unsolicited severance agreement, offering her two (2) weeks salary continuation to waive, inter alia, any claims arising under the ADA and FMLA.

**COUNT I**
**Violations of the ADA**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**and [3] Failure to Accommodate)**

56.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57.     Plaintiff suffers from qualifying health conditions under the ADA, which at times substantially limited one or more major life activities (as set forth *supra*).

58.     Despite Plaintiff's aforementioned health conditions and limitations, she was still qualified and able to perform the duties of her job well with Defendant.

59.     Prior to her pretextual termination, Plaintiff disclosed her aforementioned disabilities/serious medical conditions to Defendant's management and requested accommodations on repeated occasions shortly before Defendant terminated her employment.

60.     Defendant's management selectively applied policies and terminated Plaintiff while not similarly disciplining or terminating non-disabled employees for engaging in the same or similar conduct Defendant terminated Plaintiff for.

61.     Plaintiff therefore avers that her actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of her employment with Defendant.

62. Plaintiff avers that Defendant failed to reasonably accommodate her and that she was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the ADA.

63. Defendant's actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the PHRA**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**and [3] Failure to Accommodate)**

64. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65. Plaintiff suffers from qualifying health conditions under the PHRA, which at times substantially limited one or more major life activities (as set forth *supra*).

66. Despite Plaintiff's aforementioned health conditions and limitations, she was still qualified and able to perform the duties of her job well with Defendant.

67. Prior to her pretextual termination, Plaintiff disclosed her aforementioned disabilities/serious medical conditions to Defendant's management and requested accommodations on several occasions shortly before Defendant terminated her employment.

68. Defendant's management selectively applied policies and terminated Plaintiff while not similarly disciplining or terminating non-disabled employees for engaging in the same or similar conduct Defendant terminated Plaintiff for.

69. Plaintiff therefore avers that her actual/perceived disabilities or record of impairment were a motivating and/or determinative factor in Defendant's decision to terminate of her employment.

70.    Plaintiff also avers that Defendant failed to accommodate her, failed to engage in an interactive process and that she was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the PHRA.

71.    Defendant's actions as aforesaid constitute violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, overtime, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered unlawful employment practices, retaliation, and discrimination at the hands of Defendant until the date of verdict;

B.    Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.    Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including compensatory damages including damages for emotional distress;

D.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Dated: July 1, 2026

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Laura Perez | : | CIVIL ACTION |
| v. | : | |
| FXI, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                     (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| | | |
|---|---|---|
| 7/1/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1.  Does this case involve property included in an earlier numbered suit?  Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.  *Federal Question Cases:***

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☐ 8.  Employment
☐ 9.  Labor-Management Relations
☒ 10.  Civil Rights
☐ 11.  Habeas Corpus
☐ 12.  Securities Cases
☐ 13.  Social Security Review Cases
☐ 14.  Qui Tam Cases
☐ 15.  Cases Seeking Systemic Relief **\*see certification below\***
☐ 16.  All Other Federal Question Cases. *(Please specify)*:_____

**B.  *Diversity Jurisdiction Cases:***

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
PEREZ, LAURA

**(b)** County of Residence of First Listed Plaintiff    Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
FXI, INC.

County of Residence of First Listed Defendant    Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane    [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product    Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument |    Liability    [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel &    Pharmaceutical Slander    Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'    Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) |    Liability    [ ] 368 Asbestos Personal [ ] 340 Marine    Injury Product [ ] 345 Marine Product    Liability | | [ ] 835 Patent – Abbreviated New Drug Application [ ] 840 Trademark | [ ] 460 Deportation [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits |    Liability    **PERSONAL PROPERTY** [ ] 350 Motor Vehicle    [ ] 370 Other Fraud | **LABOR** [ ] 710 Fair Labor Standards | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle    [ ] 371 Truth in Lending    Product Liability |    Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal    [ ] 380 Other Personal    Injury    Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury -    [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise |    Medical Malpractice    Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY**    **CIVIL RIGHTS**    **PRISONER PETITIONS** | | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation    [ ] 440 Other Civil Rights    **Habeas Corpus:** | | [ ] 791 Employee Retirement Income Security Act | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure    [ ] 441 Voting    [ ] 463 Alien Detainee | | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment    [ ] 442 Employment    [ ] 510 Motions to Vacate | | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land    [ ] 443 Housing/    Sentence | | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of |
| [ ] 245 Tort Product Liability    Accommodations    [ ] 530 General | | | | Agency Decision |
| [ ] 290 All Other Real Property    [X] 445 Amer. w/Disabilities -    [ ] 535 Death Penalty    mployment    **Other:** | **IMMIGRATION** [ ] 462 Naturalization Application | | | [ ] 950 Constitutionality of State Statutes |
|    [ ] 446 Amer. w/Disabilities -    [ ] 540 Mandamus & Other    Other    [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | | |
|    [ ] 448 Education    [ ] 555 Prison Condition    [ ] 560 Civil Detainee - Conditions of Confinement | | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101)
Brief description of cause:
Violations of the ADA and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 7/1/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____